UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| EDDIE'S TRUCK CENTER, INC,  FOUR OPEN A TRUCKS, INC, | 5:21-CV-05081-VLD |
| Plaintiffs, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| DAIMLER VANS USA LLC, MERCEDEZ-BENZ USA LLC, | |
| Defendants. | |

**INTRODUCTION**

This matter is before the court on the complaint of plaintiffs Eddie's Truck Center, Inc. ("Floyd's Rapid City"[1]) and Four Open A Trucks, Inc. ("Floyd's Belgrade") alleging damages caused by defendants' Daimler Vans USA LLC ("DVUSA") and Mercedes-Benz USA, LLC ("MBUSA") violation of SDCL § 32-6B-45 and Mont. Code Ann. § 61-4-205(1).  See Docket No. 1.  This court has original jurisdiction over this matter under 28 U.S.C. § 1332 because of the diversity of citizenship of the parties and the amount in controversy.  This opinion resolves the motion to compel by Floyd's Rapid City (Docket No. 55) and defendants' motion for a protective order (Docket No. 51).

---

[1] Plaintiff's "doing business as" name is Floyd's Truck Center. Because both parties used "Floyd's Rapid City" and "Floyd's Belgrade" to describe the plaintiffs, the court will do so as well.

**FACTS[2]**

Previously, this court granted defendants' motion for judgment on the pleadings as to all claims asserted by Floyd's Belgrade.  See Docket No. 86. Although the court dismissed those claims without prejudice to move to amend the complaint, Floyd's Belgrade has not, as of the writing of this opinion, sought to amend the complaint to reassert any claims.  Therefore, only plaintiff Floyd's Rapid City and its claims are before the court presently.  This case arises out of defendants' termination of franchise and service agreements with Floyd's Rapid City when defendants allegedly ended the distribution and production of the Freightliner Sprinter vehicle.

Floyd's Rapid City, a motor vehicle dealer located in Rapid City, South Dakota, entered into a Commercial Vehicle Dealer Agreement with DVUSA which granted Floyd's Rapid City a franchise to sell and service new Freightliner Sprinter motor vehicles.  Docket No. 1, ¶ 1.  Floyd's Rapid City's franchise agreement was terminated based on distribution and production discontinuations of the Freightliner Sprinter line-make.  Floyd's Rapid City's termination occurred on February 28, 2022.[3]

Plaintiff asserts that defendants' termination was made without "good cause" in violation of SDCL § 32-6B-45.  Pending are plaintiff's motion to compel discovery [Docket No. 55] and defendants' motion for protective order

---

[2] For a complete factual background of this case, please see this court's previous order at Docket No. 86.

[3] Floyd's Rapid City's original termination date was also December 31, 2021, but it was later extended to February 28, 2022.  See Docket No. 56, p. 4 n. 2.

[Docket No. 51].  Both parties oppose the motions against them.  <u>See</u> Docket

Nos. 65 & 66.  These motions are now fully briefed and ripe for a decision.

## DISCUSSION

### A.    Standards Governing Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> *Scope in General.* Unless otherwise limited by court order, the scope of
> discovery is as follows: Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or defense
> and proportional to the needs of the case, considering the importance
> of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources,
> the importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery need not be
> admissible in evidence to be discoverable.

<u>See</u> FED. R. CIV. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an

evasive or incomplete response is made, the party requesting the discovery has

a right to move for a motion compelling disclosure after making a good-faith

effort to resolve the dispute by conferring first with the other party.  <u>See</u> FED.

R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  <u>See</u> 8

Charles A. Wright & Arthur R. Miller, <u>Fed. Prac. & Proc. Civ.</u> § 2007 (3d ed.

Oct. 2020 update).  The reason for the broad scope of discovery is that

"[m]utual knowledge of all the relevant facts gathered by both parties is

essential to proper litigation.  To that end, either party may compel the other to

disgorge whatever facts he has in his possession."  <u>Id.</u> (quoting <u>Hickman v.</u>

3

Taylor, 329 U.S. 495, 507-08 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  But these considerations are not inherent barriers to discovery.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Soc'y, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Woodmen of the World, 2007 WL 1217919, at *1 (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Woodmen of the World, 2007 WL 1217919, at *1 (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of

4

discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Cont'l Ill. Nat'l Bank & Tr. Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Additionally, "[f]iling a pre-deposition motion for a protective order is the proper method for challenging the relevance of matters of examination contained in a Rule 30(b)(6) notice."  Deneke v. Menard, Inc., 21-CV-05068, 2022 WL 2237827, at *7 (D.S.D. June 22, 2022).  Federal Rule of Civil Procedure 26(c) governs the granting of a protective order by the court:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

See FED. R. CIV. P. 26(c)(1).

## B.    What Discovery is in Dispute

Plaintiff identifies thirteen discrete requests for documents or interrogatories that it says it is seeking to compel responses to.  See Docket No. 56 at p. 2.  However, the substance of its brief never addresses these discrete discovery requests, but only discusses broad categories of information. See Docket No. 56.

Similarly, the Rule 30(b)(6) deposition notices served on defendants list seven separate categories of information plaintiff seeks to inquire into.  See e.g. Docket No. 52-1 at p. 4.  However, in its briefing, defendants address only broad categories of information as to which they seek protection rather than discussing the discrete topics listed on the subpoenas.  See Docket No. 52. The parties' briefing assumes these two sets of discovery requests (the written discovery requests and the Rule 30(b)(6) notices) are coterminous.  They do not

6

appear to the court to be exactly matching.  However, because the parties do not address each discovery item discretely, the court does not do so either.

The parties' arguments boil down to disagreement over two areas of inquiry: (1) is plaintiff entitled to discovery on line-makes other than the Freightliner Sprinter and (2) is plaintiff entitled to discovery after the date of the termination of its franchise?

### 1.    Plaintiff's Motion to Compel is Timely

A prerequisite to moving to compel discovery is the filing of "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  FED. R. CIV. P. 37(a)(1).  Similarly, under the District of South Dakota local rule 37.1, "[a] party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute."  D.S.D. Civ. LR 37.1.

The certification mentioned in FED. R. CIV. P. 37 must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any."  Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 170-171 (D. Nev. 1996). "Good faith" requires that the parties made a genuine attempt to resolve the discovery dispute without involving the court.  Id.  Finally, "conferment" requires the parties "to have had an actual meeting or conference."  Id.  Thus, before making a motion to compel, "a moving party must personally engage in two-way communication with the

7

nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id.  Unilaterally sending correspondence demanding that the other side comply with a discovery request does not satisfy the requirement.  Id. at 172.

The parties do not dispute that there were several meet-and-confer conferences held to discuss the various discovery issues at hand.  But defendants argue that plaintiff's decision to submit Rule 30(b)(6) notices instead of a motion to compel after unsuccessful meet-and-confer discussions violated this courts' scheduling order.  Docket No. 52, p. 7; see also Docket No. 82.

This court ordered that "motions to compel discovery should be filed within fourteen days after the subject matter of the motion arises." Id. at 2. Plaintiff argues that "defendants' ultimate refusal to provide the information sought following the February 7, 2023, meet-and-confer was the impetus for this motion." Docket No. 56, p. 6 n.3.  Plaintiff filed their first motion to compel discovery seven days later on February 14, 2023, thus this motion is timely under this courts' scheduling order.  See Docket No. 55 & 56.  While defendants assert that plaintiff failed to address the compromise offer made by their attorney, Michael Educate, the court finds that the discovery disputes at hand had been discussed between the parties several times and the motion to compel was filed within fourteen days after the meet-and-confer conference on February 7, 2023.  Thus, the motion is timely, and the court will reach the merits of the discovery issues at hand.

**2.    Discovery Related to Non-Freightliner Sprinter Vehicles and Dealers**

Plaintiff requests that the court compel defendants to produce information on Freightliner Sprinter vans and dealers as well as Mercedes-Benz Sprinter vans and dealers.  Docket No. 65, pp. 2-3.  Defendants oppose this, arguing that information related to the Mercedes-Benz Sprinter or other Mercedes-Benz Commercial Vehicles ("MBCV") are irrelevant because they are part of a distinct line-make from the Freightliner Sprinter.  Docket No. 66, p. 5; Docket No. 52, p. 8.  Defendants request that the court "issue a protective order limiting discovery to only the Freightliner Sprinter line-make."[4]  Docket No. 52, p. 9.

Floyd's Rapid City entered into a Commercial Vehicle Dealer Agreement with DVUSA which granted Floyd's Rapid City a franchise to sell and service new *Freightliner Sprinter* motor vehicles.  Docket No. 1, ¶ 1 (emphasis added). Plaintiff never asserts that it had a right to sell or service vehicles other than Freightliner Sprinters.  Rather, plaintiff repeatedly refers to "Sprinter vans" and "Sprinter franchises" throughout its briefs as a way of including all "Sprinter"

---

[4] Although the deposition topics listed in plaintiff's Rule 30(b)(6) notices request only information relative to "Freightliner Sprinter Vans," the definitions section of the deposition notice defines "Freightliner Sprinter Vans" to include any "Sprinter Van distributed to a Freightliner Sprinter Dealer."  See Docket No. 52-1 at p. 2.  "Sprinter Van" is in turn defined as "a commercial van branded with any trademark, trade name, logo or other commercial symbol used to designate, distinguish, advertise or market a Sprinter Van since January 1, 2015."  Id.  Thus, the definition of "Freightliner Sprinter Vans" in the Rule 30(b)(6) deposition notice includes line-makes distinct from the motor vehicle which was the subject of the franchise agreement between Floyd's Rapid City and defendants.

vehicle information under one umbrella.  But, as the defendants correctly assert, courts have held that the Mercedes-Benz Sprinter model is part of a legally distinct vehicle line-make from the Freightliner Sprinter that the plaintiff could sell and service.  See <u>Fyda Freightliner Cincinnati, Inc. v. Daimler Vans USA LLC</u>, 2022 WL 2073394, *6 (S.D. Ohio June 9, 2022); <u>Truck Country of Indiana, Inc. v. Daimler Vans USA, LLC</u>, 2022 WL 16958638 (S.D. Ind. Aug. 17, 2022); <u>River States Truck & Trailer, Inc. v. Daimler Vans USA LLC</u>, 604 F. Supp. 3d 733, 734, 744 (W.D. Wis. 2022).

While this court is not privy to Floyd's Rapid City's franchise agreement,[5] the <u>River States Truck and Trailer, Inc.</u> court explained several differences between Freightliner Sprinter dealers and Mercedes-Benz commercial vehicle dealers.  The court determined that "Freightliner Sprinter dealers were not required to build or maintain specific dealership facilities," while "Mercedes required Mercedes-Benz commercial vehicle dealers to build and maintain Mercedes-Benz image-compliant facilities using specific branding elements, color schemes, and building materials."  <u>River States Truck and Trailer, Inc.</u>, 604 F. Supp. 3d at 736.

The court also stated that "Mercedes-Benz commercial vehicle dealers were required to display signage at their dealerships that displayed the Mercedes-Benz logo and that stated that they were certified Mercedes-Benz commercial vehicle dealers."  <u>Id.</u>  Additionally, the court observed that Mercedes-Benz Commercial Vehicles ("MBCV") consisted of several different

---

[5] Neither party has filed that franchise agreement with the court.

models, while the Freightliner Sprinter was only a singular line-make.  Id.  The

court concluded that "Freightliner Sprinter dealer network was distinct from

the Mercedes-Benz commercial vehicle dealer network, and both were subject

to different signage obligations and branding guidelines.  Mercedes-Benz

commercial vehicle dealers had strict corporate image compliance requirements

that Freightliner Sprinter dealers were never subject to."  Id. at 743.

        In a companion case, Daimler Vans USA LLC v. River States Truck and

Trailer, Inc., the court dealt with a motion for protective order and motion to

compel discovery as to whether plaintiffs were entitled to discovery on vehicles

other than the Freightliner Sprinter.  Compare Daimler Vans USA LLC v. River

States Truck & Trailer, Inc., No. 22-CV-403-JDP, 2023 WL 3992021, at *1

(W.D. Wis. Apr. 12, 2023), with Docket Nos. 52, 55, 56, 65, 66, 71, 75.  The

court bluntly stated:

> Daimler Vans is right, River States is wrong. It seems that River States
> has yet to accept the court's ruling that "Daimler Vans franchised River
> States to sell Freightliner Sprinters, which are part of a separate line-
> make than the Mercedes-Benz Sprinters distributed by Mercedes." . . .
>
> In this case, the relevant information concerning the fair market value
> and pecuniary loss of River States' franchises would be River States' own
> records and those of other Freightliner Sprinter dealerships, which
> Mercedes obviously does not have. Nothing about a Mercedes Benz
> Commercial Vehicle Franchise is relevant to the instant lawsuit: it would
> be an apples-to-oranges comparison on every level. River States'
> insistence to the contrary evinces an almost vindictive, scorched-earth
> response to its loss in the previous lawsuit. In this case, all discovery
> from or about MUSA, MBCV and the Mercedes-Benz Sprinter is off-limits
> to River States.

Daimler Vans USA LLC, 2023 WL 3992021, at *1.

As in these Western District of Wisconsin cases, defendants are right. Plaintiff never had any right under the franchise agreement to buy, sell, or service vehicles from defendants other than the Freightliner Sprinter line-make. The entire premise of this suit is for damages based on defendants' alleged wrongful termination of the plaintiff's *Freightliner Sprinter* franchise. Docket No. 1, pp. 9-12. Again, plaintiff may obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Discovery on vehicles other than the Freightliner Sprinter that the plaintiff had a right to sell and service would be entirely irrelevant to its claims and certainly would be a burden on the defendants to produce.

Plaintiff pushes back on this conclusion, stating that while other courts found that the Freightliner Sprinter line-make was different, "plaintiffs are entitled to information regarding the Mercedes-Benz Sprinter because it competed in the same commercial van market in which the Freightliner Sprinter van product competed." Docket No. 65, p. 6. Plaintiff asserts the vans were "interchangeable," produced in the same factory and distributed in similar ways. Id. Plaintiff further argues that "general information regarding the commercial van market in which the Freightliner Sprinter van product competed is probative of fair market value." Docket No. 65, p. 6.

But as other courts have noted, Freightliner Sprinter dealerships and MBCV dealerships are not comparable businesses. See River States Truck and Trailer, Inc., 604 F. Supp. 3d at 736. Thus, compelling discovery on non-

12

Freightliner Sprinter dealers would not be "probative of fair market value" of plaintiff's franchise because a buyer would not factor in unrelated businesses into the value of plaintiff's franchise.

Additionally, the cases plaintiff cites in support of its assertion that it is entitled to this information because Freightliner Sprinter competed in the same market as other vehicles do not apply.  See Docket No. 65, p. 6.  Davies and 47.14 Acres of Land, More or Less, Situate in Polk Cnty., Iowa concern the value and sale of land, not the value and sale of vehicle dealer franchises.  See generally Davies v. Johanns, 477 F.3d 968 (8th Cir. 2007); United States v. 47.14 Acres of Land, More or Less, Situate in Polk Cnty., Iowa, 674 F.2d 722 (8th Cir. 1982).  These cases also dealt with comparable sales, and here, this court, along with several others, has found that MBCV dealers and Freightliner Sprinter dealers are not comparable.

Plaintiff's citation to the nearly 90-year-old case, Helvering v. Kendrick Coal & Dock Co., is also misplaced.  Docket No. 65, p. 6.  In Helvering, the court dealt with the fair market value of stock, in which the court looked to the company's "successful history" in making its determination, not to other businesses.  Helvering v. Kendrick Coal & Dock Co., 72 F.2d 330, 334 (8th Cir. 1934).  Defendants assert that this case supports their argument rather than plaintiff, arguing that, "Helvering places the emphasis in discovery where it should be in this case, namely, on the operations and profitability of plaintiff's own business."  Docket No. 71, p. 6.  The court agrees.

Plaintiff has an established vehicle dealership.  Its own financial records would certainly be more informative regarding their claim of lost profits than would financial information from non-comparable businesses.  This conclusion is echoed by Black Hills Truck & Trailer, Inc., in which a court in this district found that because Black Hills was well-established in the market, their own financial performance would be more probative of establishing lost profits.  See Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg., Inc., No. 13-CV-4113 (KES), 2017 WL 2937597, at *3 (D.S.D. July 10, 2017).  Similarly, as addressed above, the court in Daimler Vans USA LLC, dealing with almost the exact issues before this court, held that "the relevant information concerning the fair market value and pecuniary loss of River States' franchises would be River States' own records and those of other Freightliner Sprinter dealerships," not unrelated MBCV dealerships.  Daimler Vans USA LLC, 2023 WL 3992021, at *1.

Not only would discovery about other types of Mercedes Benz dealerships be inapposite to plaintiff's measure of damages herein, defendants have put forward convincing and specific evidence that production of such discovery would be unduly burdensome.  Defendants' assert that plaintiff's request "would involve a minimum of 40 to 60 hours of company time for one set of documents . . . and over 1,000 hours of company time for the other sets of documents."  Docket No. 52, p. 11.  These significant time and monetary burdens far outweigh any tangential benefit that discovery on non-Freightliner Sprinter dealers would have on plaintiff's claims.  See Roberts, 352 F.3d at 361

14

("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit.").

Thus, defendants' motion for protective order as to prohibiting discovery on non-Freightliner Sprinter dealer information is granted. To the extent it has not been produced by defendants, however, this court *does* hereby compel defendants to produce the information the plaintiff seeks as to *Freightliner Sprinter* vehicles and dealers.

### 3.   Whether Discovery Beyond the February 28, 2022, Termination is Relevant

Plaintiff requests that the court compel defendants to produce information on Freightliner Sprinter and Mercedes-Benz Sprinter vans and dealers from 2015 to present day. Docket No. 56, p. 2. As addressed above, the court has denied plaintiff's request for information pertaining to non-Freightliner Sprinter dealers and granted defendants motion for protective order as to that area of inquiry. But even with that limitation, defendants dispute the temporal scope of plaintiff's requested discovery and argue that plaintiff should not be entitled to discovery after the franchise termination date of February 28, 2022.

Plaintiff reasons that "information regarding the growth of Sprinter commercial vans after the termination of plaintiff['s] Sprinter franchise is relevant to the calculation of damages to which it is entitled because it makes it more probable that plaintiff[] would have earned more in the future, but for defendants' unlawful termination of their franchises." Docket No. 56, p. 7.

Defendants argue that information and documents created after the termination date "ha[s] no bearing to the calculations at issue in this case," would have been unknowable at the time plaintiff's franchise was terminated, and such information "would not be available to a hypothetical willing buyer." Docket No. 52, p. 10.

Plaintiff cites <u>Arnott v. Am. Oil. Co.</u>, asserting that a jury could infer damages based on future profit projections.  Docket No. 65, p. 7.  While the <u>Arnott</u> case did discuss the importance of future profits and damages, it did so by evaluating the plaintiff's own preexisting profit projections.  <u>Arnott v. Am. Oil. Co</u>, 609 F.2d 873, 887 (8th Cir. 1979) ("the jury could properly infer Arnott's long-term expectations, based on future profit projections related to him prior to execution of the first lease and the custom and practice of long-term renewals known to Arnott through his prior experience with Amoco").  Plaintiff is requesting information on a national scale, and for a period after the franchise termination dates, for Freightliner Sprinter and Non-Freightliner Sprinter dealers.  None of the information on separate Freightliner and non-Freightliner Sprinter dealers after the termination dates would have any bearing on the fair market value or lost profits of plaintiff's specific franchise.  Rather, plaintiff's own financial performance figures would be the best place to look for this information.

Nor is the court swayed by plaintiff's citation to <u>Bigelow v. RKO Radio Pictures</u>.  In <u>Bigelow</u>, theatre owners sued several film distributors and owners of moving picture theatres claiming that respondents discriminated against

16

them in the distribution of their films in favor of theatres owned by respondents.  Bigelow v. RKO Radio Pictures, 327 U.S. 251, 253-54 (1946).  On the damages issue, the Court stated, "the jury could conclude . . . from the proof of defendants' wrongful acts . . . and from the evidence of the decline in prices, profits and values, not shown to be attributable to other causes, that defendants' wrongful acts had caused damage to the plaintiffs."  Id. at 264.

The Court reasoned that a "wrongdoer may not object to the plaintiff's reasonable estimate of the cause of the injury and of its amount, supported by evidence, because not based on more accurate data which the wrongdoer's misconduct has rendered unavailable."  Id. at 265.  The Court ultimately held that "[t]he comparison of petitioners' receipts before and after respondents' unlawful action impinged on petitioners' business afforded a sufficient basis for the jury's computation of the damage, where the respondents' wrongful action had prevented petitioners from making any more precise proof of the amount of the damage."  Id. at 266.  Unlike plaintiff's requests in its motion to compel, the proper route to determine lost profits and damages would be a "comparison of [plaintiff's] receipts before and after" defendants alleged unlawful actions — not discovery on financial information from hypothetical and irrelevant dealers after the franchise termination dates.  See id.

The court in Daimler Vans USA LLC also addressed similar temporal concerns.  Again, the Daimler Vans USA LLC court was tasked with deciding motions like the ones before this court in a case about Daimler Vans similarly

discontinuing a Freightliner Sprinter franchise.  <u>Daimler Vans USA LLC</u>, 2023 WL 3992021, at *1.  There, the court held that,

> [T]o the extent that the parties agree that certain types of information are relevant but disagree as to the temporal score, Daimler Vans is correct that the relevant dates are the August 17, 2020 line-make termination date and the February 28, 2022 termination date of River States' last dealer agreement with Daimler Vans.  Evidence after the later date is not relevant and therefore not discoverable.

<u>Id.</u>  Like in <u>Daimler Vans USA LLC</u>, the last effective franchise termination date was February 28, 2022.  Any information beyond the termination date would be irrelevant to plaintiff's claims.

Plaintiff also argues that information beyond the termination date is relevant because a willing buyer of the franchise "could have anticipated that the profitability of Sprinter commercial van franchise was on the rise due to increased demand from the COVID-19 pandemic, growth of electric vehicles, or general market trends."  Docket No. 65, p. 7.  But this is speculative.  Again, "[m]ere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe[,] with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  <u>Woodmen of the World</u>, 2007 WL 1217919, at *1 (citing <u>Cervantes v. Time, Inc.</u>, 464 F.2d 986, 994 (8th Cir. 1972)).  Defendants have asserted that "many Freightliner Sprinter dealers did not operate service-only facilities for Freightliner Sprinters beyond 2021, or for more than a short period in 2022 . . . Freightliner Sprinter dealership activity in 2022 is minimal."  Docket

No. 66, p. 11.  Any discovery on entirely separate franchises after the termination date of plaintiff's franchise would be irrelevant.

Plaintiff also claims that "defendants' argument that nothing is relevant beyond the termination dates contradicts the fundamental principles underlying the duty to mitigate."  Docket No. 75, p. 8.  But this argument misses the point.  Plaintiff's duty to mitigate damages is unrelated to what defendants must provide in discovery.  "Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing."  Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota, LLC, Civ. No. 09-CV-3037 (SRN/LIB), 2014 WL 12597430, at *7 (D. Minn. Mar. 11, 2014) (quoting Morris v. Clawson Tank Co., 587 N.W.2d 253, 264 (Mich. 1998)).  This duty would not be, as plaintiff contends, "meaningless" if it could not receive information beyond the franchise termination dates because plaintiff's lost profits could be calculated by simply looking to its own financial records.

Thus, Freightliner Sprinter information beyond the termination dates, if there is any, would be irrelevant to plaintiff's claims and disproportionate to the needs of the case.  Defendants' motion for protective order as to this issue is granted and plaintiff's motion to compel is denied.

### 4.    Whether Plaintiff is Entitled to Freightliner Sprinter Sales Forecasts and Dealership Transactions

Defendants separately oppose plaintiff's request for more Freightliner Sprinter information on "Sprinter" van sales and production forecasts and "amounts paid in transactions involving the sale of Sprinter van dealerships."  Docket No. 66, pp. 11-12.  Defendants argue that "Plaintiffs have no right to

19

discover forecasts of Freightliner Sprinter sales," and this information would never have been available to any Freightliner Sprinter dealer or a potential buyer or seller of a Freightliner Sprinter dealership.  Id.

As the court has already held, plaintiff would not be entitled to sales forecasts or dealership transactions for non-Freightliner Sprinter vans or dealers because they are separate line makes from what plaintiff had a right to buy, sell, and service.  But, for Freightliner Sprinter data, plaintiff argues that "[s]ales forecasts . . . are likely to lead to the discovery of admissible evidence because they will reveal the annual expected sales revenue for Sprinter vans and an estimate of the number of Sprinter vans that defendants anticipated would be sold each year from 2015 to present."  Docket No. 75, p. 9.  But this is simply speculation.  Defendants have consistently alleged that the reason for the termination of plaintiff's franchise was based on the discontinuation of the distribution and production of the Freightliner Sprinter line-make.  Docket No. 47-1, 47-3.

While plaintiff asserts that this sales forecast data will "represent[] the growth of the Sprinter van market and is directly relevant to what plaintiff['s] future profits would have been," the Sprinter van market, as this court has held, is made up of several different Daimler line-makes besides the Freightliner Sprinter.  Plaintiff's goal is to determine what its future profits would have been had its franchise not been terminated.  The court believes that plaintiff's own financial performance and record would best help establish

20

its expectation of lost profits.  See Black Hills Truck & Trailer, Inc., 2017 WL 2937597, at *3.  Thus, the court denies plaintiff's request for sales forecasts.

But plaintiff's request for "amounts paid in transactions involving the sale of Sprinter van dealerships," is more persuasive.  While defendants are correct in asserting that "[n]o willing buyer would factor in the value of MBCV dealerships in deciding what to pay for Plaintiffs' Freightliner Sprinter dealership," a buyer may take into account the sales price of other Freightliner Sprinter dealerships in determining how much one would pay for plaintiff's Freightliner Sprinter dealership.  Defendants have stated that they will produce documents for "transactions where the amounts paid for a Freightliner Sprinter or MBCV dealership were 'identified and paid for.' "  Docket No. 66, p. 12.  Yet upon searching, defendants assert the only relevant documents that exist are those where a Freightliner Sprinter dealer voluntarily terminated their agreements.  Id.

The court finds that documents showing transactions involving the sale of Freightliner Sprinter dealerships would be relevant and proportionate to the needs of plaintiff's case.  How much a willing buyer *has* paid for such a dealership is not speculative and would be relevant to determining profits (or losses) to plaintiff's franchise if its franchise had not been terminated.  But defendants cannot produce documents and financial information if they do not exist.  Thus, the court compels defendants to conduct another search, and if relevant documents showing transactions involving the sale of *Freightliner Sprinter* dealerships are found, provide them to plaintiff.

21

**C.    Attorneys' Fees**

Both plaintiff and defendants ask the court for an award of attorneys' fees for bringing and opposing the motion to compel under Federal Rule of Civil Procedure 37.  That rule states:

(5) *Payment of Expenses; Protective Orders.*

(A)    *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).*  If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

(i)    the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)    other circumstances make an aware of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A).  To satisfy this hearing requirement, the court "can consider such questions on written submissions as well as on oral hearings." FED. R. CIV. P. 37(a)(4) advisory committee's note to 1993 amendment (regarding Rule 37(a)(4), which has since been renumbered as Rule 37(a)(5)).

The court has granted, in part, plaintiff's motion to compel.  Therefore, plaintiff meets the first criterion of Rule 37(a)(5)(A).  And plaintiff first raised the issue of Rule 37 costs and attorneys' fees in its motion to compel.  See Docket No. 56, p. 10.  Therefore, defendants had an opportunity to be heard

22

when it responded in writing to the motion.  See Docket No. 66, pp. 13-14.
With these requirements satisfied, the court examines whether any of the
exceptions outlined in Rule 37(a)(5)(A)(i)-(iii) apply.  If no exception applies, the
court must award costs.  FED. R. CIV. P. 37(a)(5)(A).

First, plaintiff must not have filed the motion before attempting in good
faith to obtain the disclosure or discovery without court action.  The court has
found that the parties sufficiently met and conferred on numerous discovery
issues and that the motion to compel was timely.

Next, the court considers whether defendants' non-disclosure, response,
or objection was substantially justified.  The court has denied in part plaintiff's
motion to compel and granted in part defendants' motion for protective order—
thus, defendants' objections to the discovery requests were substantially
justified for the reasons explained above.  Accordingly, under Federal Rule Civil
Procedure 37, an award of attorneys' fees is not warranted for either party.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is:

ORDERED that plaintiff's motion to compel [Docket No. 55] is granted in
part and denied in part in accordance with this opinion.  Defendant shall
provide, within 21 days of the date of this order, documents or answers to
interrogatories responsive to these discovery requests.

It is further ORDERED that defendants' motion for protective order [Docket No. 51] is granted in part and denied in part in accordance with this opinion.

DATED this 19th day of July, 2023.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge